844 So.2d 288 (2003)
Jerry W. DRESSEL
v.
TOPEKA TRANSFER & STORAGE.
No. 2002 CA 0779.
Court of Appeal of Louisiana, First Circuit.
March 28, 2003.
*289 Gregory J. Miller, Baton Rouge, Counsel for Appellee Jerry W. Dressel.
Richard C. Ely, Jr., Donald E. McKay, Jr., New Orleans, Counsel for Appellant Topeka Transfer & Storage.
Before: FOIL, McCLENDON, and KLINE,[1] JJ.
KLINE, J.
This is an appeal from a judgment against Topeka Transfer & Storage ("Topeka"), awarding claimant, Jerry W. Dressel, temporary total disability benefits, medical expenses, penalties and attorney's fees. The judgment was rendered after Topeka failed to appear at trial. For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On July 14, 2000, Jerry W. Dressel filed a claim for compensation with the Office of Workers' Compensation, alleging that he sustained work-related injuries to his ribs, back, neck and left leg.[2] He identified American Van and Storage ("AMerican") and Topeka as his employers at the time of the accident. On March 12, 2001, Topeka, through George Hersh, president of the company, acknowledged receipt of the claim, waived citation and accepted service. Topeka also filed an answer to the claim whereby it denied that Mr. Dressel was an employee and stated that it had no record of him working for Topeka. On April 16, 2001, American and its insurer, Vanliner Insurance Company ("Vanliner"), filed an answer. A scheduling conference was held by the workers' compensation judge ("WCJ") on May 22, 2001. Topeka was not present. At that time, a trial date was set for October 11, 2001. On June 25, 2001, American and Vanliner filed a motion for summary judgment requesting that the WCJ dismiss Mr. Dressel's claim against them. On July 13, 2001, the WCJ granted American's motion for summary judgment, dismissing Mr. Dressel's claim against American and Vanliner. Topeka was not present at the proceedings. A final judgment was signed on July 17, 2001. A notice of the judgment was sent to Mr. Dressel and counsel for American. On October 11, 2001, a trial on the merits was held. Topeka was not present for trial. The WCJ heard testimony from Mr. Dressel. The WCJ then ruled that Mr. Dressel *290 would provide additional documentation and a rule date would be set after he called. On November 16, 2001, the WCJ entered judgment in favor of Mr. Dressel and against Topeka, stating the following:
This cause came on for completion of the confirmation of default hearing on the 16th day of November 2001, in Baton Rouge, Louisiana.[3]

* * * *
It is Hereby Ordered, Adjudged and Decreed that:
1. The claimant was employed by the defendant and injured himself in the course and scope of his employment on June 9, 2000.
2. The claimant's average weekly wage on the date of accident was $300, providing a corresponding indemnity rate of $200 per week.
3. The defendant owes Workers' Compensation benefits to the claimant in the following respects:
4. The claimant is awarded Temporary Total Disability from June 9, 2000 to date at the rate of $200 per week, totaling $15,000 plus legal interest at the rate of 7.285% on each installment until paid.
5. The claimant's indemnity benefits are to continue to accrue weekly at the rate of $200 per week as provided under the Act.
6. The claimant is entitled to medical treatment for his continuing back problems with his treating physician, Dr. Charles Tessier and dental work with his treating dentist, Dr. Daly.
7. The claimant is awarded medical expenses in the amount of $8879.61 representing bills filed into evidence which are hereby declared reasonable and necessary medical treatment of his injuries, together with legal interest at the rate of 7.285% from the date of award until paid.
8. The claimant is awarded penalties in the amount of $2000 for failure to pay medical expenses and $2000 for failure to pay indemnity benefits without reasonably controverting the claim, together with legal interest at the rate of 7.285% from the date of award until paid.
Notice of the judgment was mailed to both Mr. Dressel and Topeka.
Topeka appeals the WCJ's judgment and asserts the following assignments of error:
1. The WCJ committed manifest error in finding an employer-employee relationship between Topeka and Dressel.
2. The WCJ erred as a matter of law in calculating Dressel's average weekly wage to be $300.
3. The WCJ committed manifest error in finding that an accident occurred.
4. The WCJ committed manifest error in finding that Dressel was and continued to be temporarily and totally disabled as a result of the accident.
5. The WCJ committed manifest error in finding that Dressel was entitled to medical treatment from Dr. Charles Tessier and dental treatment from Dr. Daly and entitled to medical expenses in the amount of $8,879.61.
6. The WCJ committed manifest error in finding that Dressel was entitled to penalties under the Act in the amount of $2,000 for failure to pay medical expenses and $2,000 for failure to pay indemnity benefits without reasonably controverting the claim.

*291 LAW AND DISCUSSION
In its written brief, Topeka initially makes mention that it was not aware that it was still a party to the instant case. It bases its conclusions upon conversations its attorney allegedly had with opposing counsel indicating that the case would be dropped and the fact that the notices it received regarding subsequent hearings and conferences only made mention of American as a defendant and did not state that Topeka was still a defendant at that time. Topeka does however concede that it received all notices, "including the Notice of Status Conference, Notice of Hearing on a Motion... Notice of Pre-Trial Conference, and Notice of Trial." As a result, Topeka was not present for any of the stated conferences, hearings, and the trial. Topeka does not assign error to the WCJ continuing with trial without Topeka being present. Topeka did receive notice that it was being sued, filed an answer into the record, and waived citation at that time. With that stated, we do not find that Topeka was prejudiced by any action of the WCJ regarding notice.
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the factfinder, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the WCJ's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a WCJ's factual finding only if, after reviewing the record in its entirety, it determines the WCJ's finding was clearly wrong. See Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882; Morris v. Norco Construction Company, 632 So.2d 332, 335 (La. App. 1 Cir.1993), writ denied, 94-0591 (La.4/22/94), 637 So.2d 163.
A trial on the merits of the case was held on October 11, 2001. At that time, Mr. Dressel, then unrepresented by counsel, testified by answering questions asked by the WCJ. Mr. Dressel testified that he first became employed by Topeka by working for United Van Lines. He worked there for about four and a half years. He indicated that Topeka was an agent for United Van Lines. At the time of the accident, he was a loader.
Mr. Dressel stated that the accident occurred on June 8, 2000, when he was loading a truck in Shreveport, Louisiana. He recalled that the driver's name was Mike. He stated that there were two witnesses to the accident, one named Joe. (He stated that all the specific information regarding the witnesses were in a briefcase which he did not have with him at that time). According to Mr. Dressel, two co-workers were at the top of an aluminum ladder while loading the truck. They were putting an ottoman on top of the load. He stated that one co-worker was on the other side of the ladder and he was on the side of the ladder. One co-worker hollered, the *292 aluminum ladder collapsed, and the two co-workers fell on top of him. There was a child's toy tractor on the bottom of the truck and he fell against that and then to the bottom of the truck. He then stated that after he fell, the other co-worker was helping him up and he had to sit on the side until they finished loading the truck. The co-worker then was going to call an ambulance, but told him to sit for a few minutes. The co-worker then told him to go to the doctor. He brought him back to the truck stop and left him there. The co-worker did not pay him the rest of the money he owed him for making the load.
Mr. Dressel indicated that, in turn, he went to the emergency room at a hospital in Shreveport and stayed there all night and the next day. The next day he had to go to another doctor to have x-rays taken. He stated he stayed in a motel in Shreveport for a week and a half to two weeks and then went to Baton Rouge because he did not know anyone in Shreveport. At the time, his home was in Texas.
Mr. Dressel indicated that he was supposed to get paid $75.00 on that particular load for four hours of work. He was to be paid by the load. Prior to that load, he had worked two days prior, out of Dallas, for United Armstrong, the same agent. He was doing unloading then. He was paid $12.50 an hour. He was on that truck for three days and worked an average of eight to nine hours per day. He stated that it was out of Dallas, but that he also did work for United out of Missouri and New Jersey, as recently as April or May of 2000. He indicated that he worked usually 55 and 65 hours a week[4] and that most times he was paid in cash or he received `comp' checks. No check stubs were admitted into the record. To find work with United, he would call the agent and the agent would tell him if a truck was coming in and he would go to the truck stop or meet them at the residence or at the warehouse. Normally the driver paid him. If he were a driver, United Van Lines would pay him.
Mr. Dressel indicated that he injured his leg in the instant accident. He had to have an operation on his left leg at Charity Hospital. He also hurt his left ankle and he broke his tail bone. He also injured the L4 and L5 discs in his back and his wrist. He indicated that his emergency room visit on July 21, 2001 was related to the June 9, 2000 subject accident and his visit to the hospital in Shreveport.
Mr. Dressel admitted that he had a number of previous injuries, dating as far back as 1989. He injured himself while working on a rig that caught fire. His ankle was reconstructed during surgery. He had to have it redone again in 1996 or 1997. This was the same ankle injured in the instant accident. He also was injured in Texas where United Van Lines kept him off of work for a year. He also broke two fingers and his arm prior to the instant accident also. United paid him while he was off work and paid his medical expenses. He also admitted that he injured his back in 1997 and 1998, but it had healed prior to the instant accident. He then returned to work and was injured on the truck from which injury this case arises. He has not worked anywhere since then. He stated that his treatment with Dr. Tessier was a result of the instant accident.
The record contains a transcript of the hearing held on October 11, 2001, before the WCJ. The only evidence introduced at the hearing was the testimony of Mr. Dressel and a number of exhibits, consisting *293 primarily of medical bills from July of 2001 to September of 2001. The WCJ did postpone ruling until Mr. Dressel could supplement the record with additional documentation. Mr. Dressel later submitted a letter from his treating physician, Dr. Charles R. Tessier, III, two medical bills for services rendered previously, and a printout of hospital charges from Willis-Knighton South, in Shreveport, Louisiana, for treatment on June 9, 10, and 11, 2000.
Mr. Dressel related that he worked for United, an agent of Topeka, for nearly four years, and that at the time of the accident, he was working for United loading a truck, clearly during the course and scope of his employment. Although no other evidence was introduced to support Mr. Dressel's testimony, his testimony was uncontradicted due to the absence of the defendant, and the WCJ was relegated to hear the testimony and to question the claimant in an effort to weigh the evidence and determine the credibility.
However, we find that Mr. Dressel has failed to establish that he was entitled to workers' compensation benefits from the defendant. Much of the record was wanting of evidence to support specifically what injuries were caused by the instant accident or to determine the exact amount of his average weekly wages and thus, the amount of benefits which Mr. Dressel might be entitled. The medical evidence presented by Mr. Dressel was insufficient to determine whether his disability was caused by the instant accident, and to what extent he was entitled to workers' compensation benefits. Mr. Dressel's testimony was not supported by sufficient, competent medical evidence. In fact, the statement given by Dr. Tessier included information that bring into question whether Mr. Dressel's injuries were preexisting, were caused by the instant accident, or were caused by other accidents.
A worker's testimony alone may be sufficient to discharge his burden of proof if no other evidence discredits or casts serious doubt upon the worker's version of the incident and the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends, and by medical evidence. Bruno v. Harbert Int'l. Inc., 593 So.2d 357 (La.1992). The trier of fact's determination as to whether a compensable injury was suffered is a question of fact and will not be disturbed unless manifestly erroneous or clearly wrong. Jackson v. Savant Ins. Co., 96-1424, p. 3 (La.App. 1 Cir. 5/9/97), 694 So.2d 1178, 1180.
Although a claimant can satisfy his burden of proving entitlement to workers' compensation benefits through his own testimony alone, in the instant case, Mr. Dressel's testimony contained a number of statements that were inconsistent with what he reported to Dr. Tessier, as evidenced by Dr. Tessier's written statement, introduced into the record by Mr. Dressel. According to Dr. Tessier's statement, Mr. Dressel first saw him on August 8, 2000 stating that he had an accident on July 15, 2000 when he fell at a truck stop. At that time Mr. Dressel indicated to Dr. Tessier that he was treated after the injury by the emergency room physicians at Our Lady of the Lake Hospital. On August 18, 2000, Mr. Dressel was seen by Dr. Tessier again, where he mentioned he fell in his truck in June of 2000. During trial, Mr. Dressel testified that the instant accident was the only accident that could have caused his injuries. He never mentioned the accidents as stated in Dr. Tessier's statement. Dr. Tessier's statement then indicates that on September 15, 2000, Mr. Dressel indicated to Dr. Tessier that two fellow employees *294 fell on him when a ladder collapsed.
It is also apparent from the statement, that Mr. Dressel had previous injuries, including a lifting injury in 1998. It is not clear from Dr. Tessier's statement whether or not the medical problems Mr. Dressel experienced were related to the instant accident. Whereas Dr. Tessier does conclude that Mr. Dressel is "totally disabled with chronic back pain and has a probable disc herniation or herniations in the lower back area," the statement is insufficient to establish what injuries are related to the instant accident and whether Mr. Dressel's disability is related to the instant accident. No medical records exist in the record. Although there is some evidence, albeit inconsistent, from the testimony of Mr. Dressel, the statement of Dr. Tessier, and a medical bill from Shreveport, that an accident occurred and that it was during the course and scope of his employment, the medical evidence is insufficient to support Mr. Dressel's claim that he is entitled to workers' compensation benefits from the Topeka.
Topeka also contends that the WCJ erred as a matter of law in calculating Mr. Dressel's average weekly wage. With this contention, we must agree. The testimony of Mr. Dressel was insufficient to determine an exact amount of his average weekly wage. Although Mr. Dressel testified as to how much he was to make on the particular day of the instant accident, there were too many ways in which Mr. Dressel implied he was paid. The record is deficient in competent evidence to enable a determination of average weekly wage.
As a result of these findings, we find that the WCJ's judgment must be reversed and remanded for further proceedings.

CONCLUSION
For the foregoing reasons, we reverse the WCJ's judgment and remand this matter for further proceedings. This remand makes moot a discussion of other assignments of error raised by Topeka Transfer and Storage. All costs of the appeal are assessed one-half to plaintiff and one-half to defendant.
REVERSED AND REMANDED.
McCLENDON, J., concurs.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The second page of the Disputed Claim form was missing from the record.
[3] Although the WCJ referred to the hearing as a confirmation of a default hearing, defendant had filed an answer into the record.
[4] Mr. Dressel's testimony also implied that his work was on and off and was not always comprised of the same hours each day and that his pay rate was not always the same.